Everyone we're really happy to have you here. What can I say? All right What I can say is case number one and that is Leonte Williams v. Vipin Shah Uh oh, forgive me. I do not have my notes. Whenever you're ready. I do have my notes. You can't do it without notes and I can't do it without notes. You're exactly right. I can't do it without notes. May it please the court, counsel. My name is Howard Lieber on behalf of the plaintiff, Mr. Williams. In my review of the record in this case, it appears to me that what encapsulates this case, what happened here, is that the district court essentially did what this court has taught in the Reed v. McBride case should not happen, which is that there was a paper trial. There was actually a determination by the district court judge as to the merits on summary judgment. I believe that looking at the facts of this case as well as the law, it is clear that there are fact questions that exist that precluded the entry of summary judgment and that as a matter of law, the defendants are not entitled to that. And the reason why I'm saying this is if you look at the district court's memorandum opinion and order, you will see there that the district court basically made a decision to not accept the testimony, the submission by Mr. Williams, and rather contrary to that, accepted the submission by the food service administrator, Ms. Bailey, one of the defendants in this case. Did Williams argue that the menu plan that was designed by Ms. Bailey is nutritionally inadequate? In other words, if the prison was actually serving the menu that she set out in R83-4, would that have met nutritional standards? Judge, you raise a very interesting question and one of the cruxes of our position in this case. Two responses to that. First, the menu plan, Ms. Bailey says in her affidavit, her submission, that the menu plan was supposed to be 2,200 to 2,400 calories per day. Our position is that what was on the tray that was actually received by the inmates was not that. Now, to directly answer the question that you asked, there's an interesting case which we've cited, which is the Hall v. Sutton case. In the content of that case, which addressed the fact that in 2012 when that case was ruled on, the Illinois Department of Corrections had a policy for 2,800 calories per day for the inmates. Now, Ms. Bailey has said that her menu was designed to achieve 2,200 to 2,400 calories per day. I do not know, as I stand here today, why there's a discrepancy between what that Hall v. Sutton case says was the policy of 2,800 calories per day and the menu of 2,200 to 2,400 that Ms. Bailey is talking about. But is there any evidence that the menu plan that was set forth there in R83-4 is not nutritionally adequate? So what evidence would there be in the record that the plan itself is flawed or inadequate? I understand that he claims he was not served this menu, but is the menu itself inadequate? I am not aware of any point in the record that specifically says the menu itself was inadequate. What I am aware of in the record is the affidavits of Mr. Williams and two other inmates, I believe one current inmate and one former inmate, that says that they did not receive all of what was on the menu. Now, is there any evidence in the record that any of the defendants knew that the approved menu was not being served? Because it appears that Ms. Bailey did nothing more than formulate the menu for Illinois prisons and then what you had was the dietary managers at each facility and it is they who were charged with carrying it out. Did Williams sue the wrong person? Well, let me respond to that by saying this, Judge. There are three defendants that are named for purposes of what we've called in the paperwork state defendants. So that would be the warden, Ms. Lashbrook, that would be Ms. Bailey, and that would be Mr. Baldwin as the representative of the Illinois Department of Corrections. The affidavit of Mr. Williams in its final paragraph indicates that he had a conversation with Warden Lashbrook regarding the nutrition and says that Warden Lashbrook made a comment about compliance with the Eighth Amendment. That is in the record. Now, building on that, let me add one additional point that there are a couple of district court cases. One, I believe, is the Powell case. One is the Freeman case, which we cite in the paperwork, which indicates that where a prison official is in the capacity such as the warden, they are basically imputed to have knowledge of the policies and procedures at the facility, which would include knowledge of the nutritional issues at the facility. I have to tell you, I see this as a problem. I didn't see evidence that any of the defendants, the actual defendants, were aware that the menu plan was not being followed in the prison. The only point that I can say, Judge, that directly answers that is, as I said, the final paragraph of Mr. Williams' affidavit that was attached to the opposition to the motion for summary judgment does make reference to a conversation with Warden Lashbrook. There was no depositions. Mr. Williams was deposed, but there were no depositions of the other defendants. And so that was never fully explored. Mr. Lieber, following up on that, opposing counsel is going to note that Dr. Shaw is not mentioned other than on the cover of the brief. Is it conceded by the appellant that there is no further claim against Dr. Shaw? Yes, Judge, you are correct. Same with regard to the soy consumption plan. Is it a concession that there's no further? The way I conceive of the appeal is with respect to count three of what the district court's order related to, which is the nutritional issue, this issue about the two meals per day as opposed to the soy and Dr. Shaw. I was a little bit surprised that Dr. Shaw briefed the issue. It was not our intent to cause him to do that. With regard to the caloric intake, the allegation by Mr. Williams is 750 calories per meal, two meals per day. He bases that on his estimate and conversations he had with people who worked in the kitchen. Is that correct? That is my understanding. Now, to be candid with the court, his complaint does also reference 1,600 calories a day and 2,800 as what he expected to receive. I find it interesting that the 2,800 he's referencing corresponds to the 2,800 in that other case, Hall v. Sutton. I don't know, quite candidly, I don't know where he got those numbers from, but those are what he has alleged. I would take the position that given the question of the 2,800, the 2,200, and the 2,400 that Ms. Bailey has referenced in her submission, that there is in his statement that he got 750 calories per tray, that that creates a fact question that should have precluded summary judgment and allowed for the trier of fact to determine who was more credible on that issue. A question that goes to that, there's allegations that certain compartments on trays were not filled. Is there anything in the record that talks about are these prepackaged trays that are saran wrapped or is there a buffet line? Is there anything that talks about how the food gets to the prisoners? It is my understanding that, and I'm trying to go back to his deposition, because frankly that's the only deposition that we have. I believe that what he was trying to say was that it was not prepackaged, that it was put on the tray by food service people, because the three affidavits that are attached also indicate that in other institutions and in other circumstances where they received three meals a day, all of the compartments on the trays were filled. It's clear to me that what Mr. Williams is saying is that under the brunch program, a decision was made to not fill all of the compartments of the trays. Quite honestly, the information that relates to that is uniquely within the possession of the defendants as the folks who are involved with the food service and the dissemination of the food. I see that based on the numbers, my initial opening statement time has expired, so unless there are additional questions that the court has, I will take my leave and come back on rebuttal. Thank you so much. Is the yellow light not working? Okay, because he had requested five. Okay, thank you. Hi, Ms. Buell. Good morning. Good morning, Your Honors, and may it please the Court, Counsel, Assistant Attorney General Caitlin Buell, on behalf of Defendants Appellees. These are the State Defendants Appellees, Suzanne Bailey, John Baldwin, and Jacqueline Lashbrook. In Mays v. Springborn, Antonelli v. Sheehan, and Lunsford v. Bennett, this Court has held that under the Eighth Amendment, prisons must provide inmates with nutritionally adequate food. Before you start, I do have a question, and that is this. There is no signature on the copy of Suzanne Bailey's affidavit in the record, and that's at Record 83-2. Is there a signed affidavit somewhere that's part of the record? Your Honor, I believe that the signature is omitted in terms of the docket, but I will have to double-check, and I can provide some supplemental briefing on whether there is a signature or not. Okay. Well, that would be appreciated. Yes. The Department of Corrections did establish that during the Pilot Brunch Program, they were serving nutritionally adequate food. The evidence presented at summary judgment showed that Williams received adequate nutrition. The meal trays that he was given contained between 2,200 and 2,400 calories a day. As Williams' diet was nutritionally adequate and because state defendants were entitled to qualified immunity. You know, it appears that the brunch plan packed an entire day's worth of calories into a six-hour period and then left the inmates to their own devices for the other 18 hours. I really, I have to tell you, I shudder to think how prisoners behave towards staff and towards each other when they have not eaten for that length of time. But is there any evidence in the record on the timing of the meals? I mean, he clearly complains of headaches, hunger, which, you know, it's common sense to tell us that happens when a person has not eaten for an extended period of time. Has the state responded to his claims of hunger and headache caused by this plan? Well, the state was not aware of his claims of headache and hunger. He did not satisfy that subjective element of deliberate indifference. He did not complain to State Defendant Bailey. He admitted during his deposition that he never communicated to Bailey his complaints about the brunch program. He never admitted to the director any of his problems with the brunch program, nor did he admit to the warden. What counsel was pointing to, that William spoke to last week, the information in the affidavit just does not bear that out. It says that he received information from the warden about the brunch program, but it's not that they had a conversation. And so they did not have any sort of subjective knowledge about his complaints that he was having headaches. Simply complaining to a nurse does not somehow in a telephone-type manner get that information to those individuals. They were not made aware of it. They couldn't rectify any sort of situation. But in any event, the planned master menu meals contain sufficient calories to provide adequate nutrition. They contain eight ounces of protein daily, five to six vegetable choices. But you see, here's the thing. Suzanne Bailey's affidavit states only that as the food service administrator, she designed the menu for the brunch program. She designed it to be nutritionally adequate. Is there any evidence in the record regarding whether that menu was actually served to the inmates? Where in the record will we find that evidence? You can actually find that evidence within the affidavit itself. It says that when substitutions were necessary because the food was not available, a like food was substituted. And she also stated that the individual... That doesn't do it. But what else? Also, the other individual... What she stated was she designed this menu and it was up to those individual food service providers at each individual prison to carry out that menu. And it was her expectation that that menu was indeed carried out. And in any event, it is after we put forward this evidence, the plaintiff's burden to respond. There could have been depositions of state defendants. Williams was represented by counsel this entire time. He could have deposed the state defendants. He could have deposed food service administrators. He could have attached other evidence to rebut what was presented on summary judgment. And he simply did not. In addition, the overall eating two meals a day is something that many Americans do even generally in society. It's not necessarily a constitutional mandate that one must have three meals a day. In fact, providing two nutritious meals daily to prisoners is actually consistent with out-of-circuit case law, including Green v. Farrell, which was a... Did you say out-of-circuit? Yes. However, they do provide really instructive and principled reasons for why this court should perhaps adopt these sorts of arguments. For example, in Green v. Farrell, inmates were actually bringing a class-action lawsuit contending that a jail had only served two meals a day that were nutritionally adequate in every area except for vitamin D. And the district court found that there was no reason to require a third meal, and the Fifth Circuit affirmed and held that expert recommendations don't necessarily create constitutional standards under the Eighth Amendment. And here, the recommended diet was the 2,200 to 2,400 calories, and that is above the 2,000 calories that is recommended to be consumed every day. Ms. Buell, the record says that the brunch program stopped on December 1st of 2015. It says it was related to costs. How is serving fewer meals more costly? Maybe I've got the costs angle wrong. Yes, Your Honor. It's not necessarily fully borne out in the record. However, the cost of serving the two meals a day, we can see from the affidavit that there were additional proteins that were provided through the brunch program versus the regular meal program. Eight ounces versus six ounces. Correct. And just in general, the cost of having the number of guards, from what was communicated to me by my clients, breakfast was often the least attended meal of the day given the time period that it was served. And thus, by having brunch, there were many more individuals who chose to partake in the brunch since it was combined, and it was at a little bit of a later time during the morning. You say chose. You're not saying that Mr. Williams could have chosen to have three meals? No, no. At Pinkfeetville, during the pilot brunch program, the only option was to partake in lunch and dinner. At a regular facility that was not participating in the brunch program, they had the three meals. And of course, just as we retain our autonomy to decide whether we want to consume lunch on one particular day or to consume dinner on one particular day, inmates also have that ability. In addition, in any event, state defendants would be entitled to qualified immunity on Williams' brunch claim. There is no clearly established case law recognizing that serving inmates two nutritious meals a day instead of three creates a serious risk of harm to an inmate's current or future health. And if there are no further questions, we would ask that this court, for the reasons stated today and in our brief, affirm the district court's judgment in state defendant's favor. Thank you. Thank you. Okay, Mr. Sansone. Thank you, Your Honor, and may it please the court, just to save the court some time, it's my understanding, based on what's been expressed today, that appellant is abandoning any appeal or has abandoned any appeal against my client, Dr. Shaw. It's our physician, Dr. Shaw, certainly exercised professional judgment here, and there's no issue about his treatment at this time. So to save the court time, unless the court has questions, I would end it with that. No questions. Thank you, Your Honor. All right. Mr. Lieber, you have four minutes and 17 seconds. Thank you, Judge. A couple brief comments in response to the state's comments. As you can see, what was said repeatedly was operating on the assumption that the meals received by the inmates are nutritionally sufficient. You never, Judge, got a direct response to your point. Where in the record does it say that the meals on the tray actually received by the inmates met the 2200 to 2400 calorie count that was intended by Ms. Bailey? There is nothing in the record to establish that, and that is information that is uniquely within the availability of the defendant. Why were there no depositions? Judge, I have gone back and I have asked that question, and I have seen emails that go back to at least August of 2017, in which my colleague who was handling this repeatedly asked for depositions of these defendants, a 30B6 representative, and we were repeatedly told there were scheduling problems, those people were busy people, we were having problems getting a hold of them, and that process kept going on and on until the point that on the last day of discovery they filed the motion for summary judgment. As you will see in the record, we filed, as part of our opposition to the motion for summary judgment, a Rule 56D request with an affidavit from Mr. Gordon, which I believe is Exhibit E to the opposition, requesting an opportunity to do that discovery before fully responding to the motion. The district court, in footnote 2 of the memorandum and order, basically, and I am somewhat baffled by the language in there, says that it was not properly supported. We do have an affidavit that does explain the additional discovery, the need for that, and so, as a separate issue, I believe that there was error on the district court. I recognize that they have wide discretion on that point, but I believe that that was an abusive discretion, and we should have, under those circumstances, repeatedly asking for that discovery and not getting it, and then being faced with a summary judgment on information uniquely within the possession of the defendants being put in that posture. Wouldn't you be able to subpoena? Wouldn't you be able to do a 30 v. 6 notice? And if you don't get a response, you move to compel. You involved the court earlier, before 56D. My understanding, Judge, was that there were multiple continuances of discovery that had been brought up with the court, and that was the intent, was that we were trying to cooperate with the state in getting those depositions, and I believe that the record shows that they had even asked for a stay of discovery prior to the ruling on the summary judgment, and that is all factoring into that. Now, I would also add, just briefly, that I believe that even on the record that we have here, I would take the position that there are fact questions that have been created, and that as a matter of law, that the defendants are not entitled to summary judgment. Let me zero in on that. Two of the affidavits that have been submitted are from prisoners. One from Jermaine Young. He says he was an inmate during 2014 and 2015. Do we know the months? I do not, Judge. The other affidavit's from Rashawn Williams, I assume no relation to Leontay Williams. That affidavit makes no reference to when Mr. Rashawn Williams would have been a prisoner at Pinckneyville. My understanding is that these were people who were there at the time of the brunch program. Mr. Williams was there from July of 2015 until after December 1st when the program ended. I see that my time is just about up. Are there any additional questions that I can address? Do you have a final thought? Judge, my final thought is that in all fairness and for due process purposes, because of what happened on the discovery, I think it is clear that summary judgment was not appropriate here. This is a case where the district court basically took the role of the trier of fact, made certain decisions on the merits, and I would ask that the decision be reversed, the matter be remanded, and allowed to go through the normal process of resolution, including a trial. Thank you very much. You were not appointed, were you? We were. It was called recruited. Okay. And Mr. Gordon, my colleague, was recruited. I, in turn, was recruited for purposes of the appeal, and that puts me in front of you today. In other words, you were lassoed. I will let that go, not disparaging any of my colleagues. Okay. So you have the thanks of the court. Thank you. As does the government. Thank you.